UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Respondent,

vs.

SHONDOR JANELL ARCENEAUX,

Movant.

No. 2:03-cr-0371-MCE-EFB P

FINDINGS AND RECOMMENDATIONS

Movant Shondor Arceneaux is a federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] Arceneaux challenges his conviction and sentence on three counts of bank robbery, in violation of 18 U.S.C. § 2113, and three counts of using a firearm in connection with those robberies, in violation of 18 U.S.C. § 924(c)(1). He initially sought post-conviction relief on the grounds that: (1) the government violated his Sixth Amendment right to notice and his Fifth Amendment right to due process when it failed to notify him in the indictment that he faced mandatory consecutive sentences of 25 years in prison on the firearm counts; (2) the trial court lacked jurisdiction to sentence him; (3) his trial and appellate counsel rendered ineffective assistance; and (4) the government violated his right to due process in failing to advise him that Dakina Sudduth would be a witness at his trial. Then, in a second amended § 2255 motion, Arceneaux added a claim that three of his convictions should

---

[1] This motion was assigned, for statistical purposes, the following civil case number: No. 2:11-cv-2781-MCE-EFB P.

be set aside because armed bank robbery pursuant to 18 U.S.C. §2113(a), (d) is no longer a crime of violence within the meaning of 18 U.S.C. §924(c)(3) in the wake of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) (*Johnson II*).[2] Upon careful consideration of the record and the applicable law, the court recommends that Arceneaux's § 2255 motion be denied.

I.      Procedural Background

On September 1, 2005, the grand jury returned a Fifth Superseding Indictment charging Arceneaux with three counts (counts 3, 11, and 17) of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and three counts (counts 4, 12, and 18) of using a firearm, within the meaning of 18 U.S.C. §924(c)(1). ECF No. 260. Arceneaux's jury trial commenced on January 18, 2006. ECF No. 312. On February 14, 2006, the jury found Arceneaux guilty on all counts. ECF No. 368.

On April 25, 2006, Arceneaux was sentenced to 293 months (24.42 years) on counts 3, 11, and 17, to run concurrently with each other; 84 months (7 years) on count 4, to be served consecutively to the terms imposed on counts 3, 11, and 17; and 300 months (25 years) on each of counts 12 and 18, to be served consecutively with each other and consecutively to the terms imposed on counts 3, 11 and 17, for a total aggregate sentence of 977 months (81.42 years) in prison. ECF No. 418.

Arceneaux filed an appeal of his judgment of conviction to the U.S. Court of Appeals for the Ninth Circuit. ECF No. 415. Therein, Arceneaux claimed that: (1) the prosecutor improperly vouched for the government's cooperating witnesses and made other inflammatory statements during closing argument; (2) the district court erred in permitting the government to present the direct testimony of three cooperating witnesses without allowing immediate cross-examination of each witness; (3) the government's delay in providing Jencks Act material prevented the

---

[2] In recent years the Supreme Court has issued two Johnson decisions which are commonly referred to as *Johnson I* and *Johnson II*. *Johnson I* refers to *Johnson v. United States*, 559 U.S. 133 (2010) wherein the court held that the term 'physical force' contained in the ACCA definition of 'violent felony' "means violent force – that is force, capable of causing physical pain or injury to another person. *Id.* at 559 U.S. at 140. Unlike its successor, *Johnson I* did not substantively address the ACCA's residual clause.

defendants from effectively cross-examining the cooperating witnesses; (4) the district court erroneously denied the defense request for a hearing to determine whether the government made promises to prosecution witness Dakina Sudduth in exchange for her testimony; (5) the trial court erred in denying a defense request for a perjury instruction as it applied to one of the cooperating witnesses; (6) the cumulative effect of errors at his trial violated his right to due process; and (7) there was insufficient evidence to convict him of two of the robberies for which he was convicted. *United States v. Williams*, *et al.,* 375 F. App'x 682 (9th Cir. 2010).  The Ninth Circuit upheld Arceneaux's conviction and sentence in a memorandum decision filed April 8, 2010.  *Id.*

Arceneaux filed the instant motion pursuant to 28 U.S.C. § 2255 on October 20, 2011. ECF No. 852.  The government filed an opposition on October 24, 2012.  ECF No. 908. Arceneaux did not file a reply; however, he filed a letter to the court on July 5, 2013 and a document entitled "Supplemental Authority" on June 2, 2014.  ECF Nos. 921, 962.  On March 2, 2015, the undersigned held an evidentiary hearing on Arceneaux's claim that his trial counsel rendered ineffective assistance during the plea bargain process.  Arceneaux filed an amended section 2255 motion on August 22, 2016 adding his *Johnson II* claims.  ECF No. 1045.  The government filed its response to that motion on October 18, 2016 (ECF No. 1057) and Arceneaux filed a reply on November 24, 2016 (ECF No. 1069).

II.  Applicable Law

Below is summary of the legal standards applicable to motions brought pursuant to 28 U.S.C. § 2255 as well as the standards which govern the ineffective assistance of counsel claims which movant presents in the instant motion.

A.  Motions Pursuant to 28 U.S.C. § 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence.  *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States.  *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).  To warrant relief, a

3

petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

B. Ineffective Assistance of Counsel

The clearly established federal law for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The United States Supreme court has confirmed that the Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To prevail on such a claim, a petitioner must demonstrate "'gross error on the part of counsel,'" *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *McMann v. Richardson*, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" *Id.* (quoting *United States v. Day*, 969 F.2d 39, 43 (3rd Cir. 1992)).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In order to demonstrate prejudice where a defendant claims that trial counsel's defective advice caused him to reject a plea offer and proceed to trial, prejudice is demonstrated

4

where "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S.Ct. at 1385.

III.    Arceneaux's Claims

A.    Mandatory Consecutive Sentences Under 18 U.S.C. § 924 (c)(1)(C)

As described above, a jury found Arceneaux guilty of violating three counts of 18 U.S.C. § 924(c)(1) (using a firearm during and in relation to a crime of violence). ECF No. 908 at 42-44. Section 924(c)(1)(A) is a penalty provision that provides mandatory minimum sentences for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(1)(C)(i) requires a mandatory minimum sentence of 25 years "in the case of a second or subsequent conviction under this subsection." 18 U.S.C. § 924(c)(1)(C). *See also United States v. Hungerford*, 465 F.3d 1113, 1119 (9th Cir. 2006) (§924(c) "requires a 5–year sentence for a single conviction of use of a firearm and mandatory consecutive sentences of 25 years for each additional count."). Pursuant to 18 U.S.C. § 924(c)(1)(C)(i), Arceneaux was sentenced to 25 years in prison on counts 12 and 18, to be served consecutively.

In his first claim for relief, Arceneaux argues that the trial court's imposition of two consecutive 25 year prison terms on counts 12 and 18 violated his right to due process because he was not notified in the indictment that he faced mandatory minimum consecutive sentences on those counts. ECF No. 852 at 7-8. He claims that he "was not put on notice, by the indictment, that he was subjected to such a draconian sentence, [and that] had he known that he was facing at least 25 years or the total of 50 years for Counts Twelve and Eighteen, he would have pled guilty." *Id.* at 8. Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Arceneaux also argues that the imposition of consecutive terms on these two counts violated his Sixth Amendment right to notice of the charges against him because the provisions of 18 U.S.C. § 924(c)(1)(C) are

5

"element[s] of the offense that must be charged in the indictment and proven beyond a reasonable doubt." *Id.* at 10. Arceneaux further claims that the trial court did not have jurisdiction to sentence him to enhanced terms under § 924(c)(1)(C) because he had not been previously convicted of the use of a firearm. *Id.* at 9. He argues that multiple § 924(c)(1) counts contained in a single indictment do not trigger the "second or subsequent conviction" provisions of § 924(c)(1)(C).

Finally, Arceneaux claims that his trial counsel was ineffective in: (1) failing to inform him that "he was facing 50 years for the guns alone;" (2) failing to "object to the indictment" on the grounds that the § 924(c) charge was not pled in the indictment; and (3) allowing Arceneaux to "stand trial for crimes that he had not committed and is being punished for." *Id.* at 8-9, 10. Arceneaux argues, generally, that his trial counsel "had an obligation to object to this manifest miscarriage of justice." *Id.* at 10. Arceneaux states he would not have proceeded to trial if he had been advised that he faced a 50 year sentence on the gun charges. *Id.* He also claims that his appellate counsel rendered ineffective assistance in failing to "raise these claims on direct appeal." *Id.*

The government counters that Arceneaux's claims, described above, are subject to a procedural default because he failed to raise them on direct appeal. ECF No. 908 at 29. The government also argues that Arceneaux's claims fail on their merits. *Id.* at 28-30.

### 1. Procedural Default

In *Bousley v. United States*, 523 U.S. 614, 622 (1998), the United States Supreme Court held, in the context of a § 2255 motion, that "where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice" . . . or that he is "actually innocent." This is because "habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Id.* at 621 (citation omitted). Accordingly, "most claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence." *United States v. Braswell*, 501 F.3d 1147, 1149 n.1 (9th Cir. 2007).

Cause may be based on "some objective factor external to the defense [that] impeded counsel's efforts to comply with the . . . procedural rule . . . ." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Cause may also be established by attorney error that rises to the level of constitutionally ineffective assistance of counsel. *United States v. Ratigan*, 351 F.3d 957, 964-65 (9th Cir. 2003). Claims of ineffective assistance of counsel, and claims that "could not be presented without further factual development" are excluded from the cause and prejudice requirement and may be heard on collateral review, even though the defendant could have, but did not raise the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 505 (2003).

Arceneaux did not raise on direct review his claims that: (1) the trial court's imposition of two consecutive 25 year prison terms on counts 12 and 18 violated his right to due process because he was not notified in the indictment that he faced mandatory minimum consecutive sentences on those counts; (2) the imposition of consecutive terms on counts 12 and 18 violated his Sixth Amendment right to notice of the charges against him because the provisions of 18 U.S.C. § 924(c)(1)(C) are elements of the offense that must be charged in the indictment and proven beyond a reasonable doubt; and (3) the trial court did not have jurisdiction to sentence him to enhanced terms under § 924(c)(1)(C) because he had not been previously convicted of the use of a firearm. With respect to these claims, the record was fully developed on direct appeal and no further factual development was necessary. Nor has Arceneaux shown cause or prejudice or that he is actually innocent of the firearm charges. Accordingly, these three claims are barred and may not be addressed in the instant § 2255 motion. However, Arceneaux's claims that his trial and appellate counsel rendered ineffective assistance in connection with the firearm allegations are not barred pursuant to the rule announced in *Bousley*. *Massaro*, 538 U.S. at 505. Those claims will be addressed below.

## 2. Ineffective Assistance of Counsel

Arceneaux is not entitled to relief on his claim that his trial counsel failed to "object to the indictment" on any of the grounds articulated in his first claim for relief. First, as the government points out, Arceneaux's claim that he was not properly sentenced pursuant to 18 U.S.C. § 924(c)(1)(C)(i) because he had not previously been convicted of a crime of violence is

7

foreclosed by *Deal v. United States*, 508 U.S. 129 (1993). In *Deal*, the United States Supreme

Court made clear that:

> when the government charges more than one § 924(c) offense in a single indictment, each additional count is to be treated as a "second or subsequent conviction" for purposes of 18 U.S.C. § 924(c)(1)(C)(i) and therefore carries a mandatory minimum sentence of twenty-five years. Because § 924(c)(1)(D)(ii) requires that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed," each independent § 924(c) count in the indictment imposes a consecutive sentence in addition to any other sentence imposed, either under § 924(c) or under any other counts for which the defendant has been convicted.

*United States v. Beltran-Moren*, 556 F.3d 913, 915 (9th Cir. 2009). *See also United States v. Turner*, 468 F. App'x 788 (9th Cir. 2012) (same). Thus, the district court did not improperly sentence Arceneaux to consecutive terms for violating multiple counts of § 924(c)(1) even though he had not been previously convicted of using a firearm in connection with a crime of violence. A previous conviction is not required under this sentencing provision; it is enough that Arceneaux was charged with multiple violations of § 924(c) in the indictment. *Beltran-Moren*, 556 F.3d at 915.

Arceneaux also argues that his sentence violates the Sixth Amendment pursuant to the decision in *Apprendi* because the § 924(c) charge was not pled in the indictment, and that his trial counsel rendered ineffective assistance in failing to challenge the indictment on this basis. In *Apprendi*, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment and the Sixth Amendment notice and jury trial guarantees require that any fact other than a prior conviction that "increases the penalty for a crime beyond the prescribed statutory maximum" be "submitted to a jury and proved beyond a reasonable doubt." *Id.*, 530 U.S. at 490. Arceneaux fails to cite any case holding that the provisions of § 924(c)(1)(C)(i) are elements of the offense that must be pled and proved beyond a reasonable doubt, as opposed to a sentencing enhancement to be determined by the District Court upon a conviction of multiple counts of § 924(c)(1). The sentencing judge in this case did not impose a higher sentence for Arceneaux's multiple violations of § 924(c)(1) than the statute prescribes based on any fact or facts found by the judge. The jury itself found that Arceneaux knowingly committed an armed bank robbery and

that he used a firearm in furtherance of that crime. ECF No. 368 at 42-44. The sentencing judge simply sentenced Arceneaux to the minimum term prescribed by the statute for multiple violations of § 924(c)(1). Accordingly, his sentence on counts twelve and eighteen did not violate the Sixth Amendment, as interpreted in *Apprendi*. [3]

Because Arceneaux's sentence on counts 12 and 18 was not improper or illegal for the reasons that he claims, his trial and appellate counsel did not render ineffective assistance in failing to challenge his sentence on those grounds. Nor is there any evidence that Arceneaux has been convicted for crimes he did not commit. An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)). *See also Rhoades v. Henry*, 638 f.3d 1027, 1036 (9th Cir. 2011) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere"); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance"). Accordingly, Arceneaux is not entitled to relief on these claims of ineffective assistance of counsel.

Arceneaux also claims that his trial counsel rendered ineffective assistance in failing to advise him that he faced a likely sentence of 50 years on the firearm possession counts, failing to object to the prosecutor's improper vouching for government witnesses, and failing to object to jury instructions and the general verdict. Those claims will be addressed below.

/////

---

[3] In *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the Sixth Amendment right to trial by jury requires a jury to determine facts that increase a mandatory minimum sentence. However, the *Alleyne* decision does not provide movant with a basis for relief because it is not retroactively applicable to cases on collateral review. The Ninth Circuit has concluded that *Alleyne* does not apply retroactively to cases that became final before that decision was announced. *See Hughes v. United States*, 770 F.3d 814, 818-19 (9th Cir. 2014); *In re Mazzio*, 756 F.3d 487, 491 (9th Cir. 2014). *See also Broussard v. United States*, No. 1:03-CR-05054, 2014 WL 3530003, at *4 (E.D. Cal. July 15, 2014) (noting that district courts in the Ninth Circuit have "uniformly" concluded that the decision in *Alleyne* is not retroactive, and citing cases); *Jackson v. United States*, Nos. 5:11-CR-00231-F-1, 5:13-CV-00284-F, 2014 WL 4060270, at *4 (E.D.N.C. Aug. 14, 2014) (motion to amend §2255 motion to add claim based on *Alleyne* denied because *Alleyne* not retroactive to cases on collateral review).

B. <u>Disclosure of Prosecution Witnesses</u>

In his next claim for relief, Arceneaux argues that the Government's failure to advise him that Dakina Sudduth would be called as a prosecution witness violated his right to due process. ECF No. 852 at 10. He states that "he was not given any kind of notice, that, Dakina Sudduth, was going to be a witness against him and that had he known that the government was going to call her as a witness, he would have pled guilty." *Id.* at 11. Arceneaux notes that Ms. Sudduth was not testifying "for downward departure," implying that her testimony was perhaps more credible for that reason. *Id.* He states, "the absence of this notice, deprived the movant of being able to make an informed decision and take the choice of no trial." *Id.*

Assuming *arguendo* that this claim is properly before the court, it should be denied. Arceneaux has cited no authority for the proposition that the government was required to furnish him with a list of witnesses prior to trial. As the government points out, only in a capital case is the defendant entitled to a list of government witnesses prior to trial. *See* 18 U.S.C. § 3432 (allowing such discovery in a death penalty case). In a non-capital case, the defense does not have a right to pretrial discovery of information regarding prospective government witnesses without a showing of reasonable necessity. *See* Fed. R. Crim. P. § 3500 (the Jencks Act) (no statement of a government witness is discoverable until the witness has testified on direct examination); *United States v. Jones*, 612 F.2d 453 (9th Cir. 1980). Here, there is no indication from the record that Arceneaux's counsel requested a list of government witnesses prior to trial or that he made a showing of good cause to obtain this information.

Arceneaux has also failed to show that the prosecutor failed to turn over any exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); *Giglio v. United States*, 405 U.S. 150 (1972) (information regarding the credibility of a trial witness discoverable under *Brady* rule). Sudduth's testimony was not exculpatory and she did not provide impeachment evidence that would have affected her credibility.

In any event, as noted by the government, the record reflects that Arceneaux's trial counsel was aware prior to trial that Sudduth was at least a potential government witness. *See* ECF No. 352 (testimony of Dakina Sudduth) at 27 (trial counsel asked Sudduth on cross-examination whether she recalled a defense investigator coming to her house prior to trial to talk to her about Arceneaux's case). Under these circumstances, Arceneaux cannot establish that the government's failure to apprise him that Sudduth would be called as a trial witness was fundamentally unfair or otherwise violated his right to due process.

Arceneaux also alleges that when Ms. Sudduth was called to the witness stand, he asked his trial counsel to "stop the trial because he wanted to change his plea." ECF No. 852 at 11. He states that his trial counsel falsely told him that "it was too late and that the ball was rolling." *Id.* Arceneaux argues that this "fib" by trial counsel prevented him from pleading guilty. *Id.* He states that had he known his trial "could have been stopped," he would have "fired his attorney and went pro se, so that he could have negotiated [with the government]." *Id.*

Arceneaux has failed to show that his trial counsel's failure to "stop the trial" after Sudduth was called to the witness stand was unreasonable or outside the range of competence demanded of criminal defense attorneys. Even assuming *arguendo* that trial counsel rendered deficient performance in failing to "stop the trial" after Sudduth was called as a witness, petitioner has failed to demonstrate prejudice with respect to this claim. The government denies that it would have entered into plea negotiations with Arceneaux after the trial started, even if Arceneaux had wished to do so. ECF No. 908 at 34. Counsel for the government states, "under no circumstances in this case would the government have entered into any negotiations with Arceneaux after the trial began." *Id.* Further, as the government points out, Arceneaux was never offered a plea agreement; therefore, he would have had little incentive to plead guilty in the middle of trial. *Id.* Under the circumstances presented here, Arceneaux has failed to show that his trial counsel rendered ineffective assistance with respect to his actions after Dakina Sudduth was called as a prosecution witness. Accordingly, Arceneaux is not entitled to relief on this claim.

/////

### C. Trial Counsel's Advice as to Arceneaux's Possible Sentence

#### 1. Arceneaux's Allegations

In Arceneaux's next ground for relief, he claims that his trial counsel rendered ineffective assistance in misinforming him about the 50 year prison sentence he faced on counts 12 and 18 if convicted on those counts. ECF No. 852 at 12. He states that, prior to trial, the government "offered [him] 20 years, if he 'plead' guilty." *Id.* According to Arceneaux, he rejected this offer because his trial counsel told him "the bank robbery counts would be grouped together for sentencing purposes and the maximum penalty he was facing for each 924(c) charge, was 60 months each to be ran [sic] concurrently." *Id.* Arceneaux states that, based on this information from his trial counsel, he "thought it was best for him to face the jury and if he was found guilty he would receive at best 15 more years, than the 20 year 'deal,' offered by the government." *Id.*

Arceneaux specifically complains that his trial counsel failed to inform him he would receive a 50 year sentence if he was found guilty of multiple counts of firearm possession. *Id.* He states that, if he had known this, he would have "taken the deal that the government offered him." *Id.* He argues that trial counsel's failure to "put [him] on Notice caused him to unknowingly go to trial." *Id.*

Arceneaux includes his own declaration in support of this claim. Therein, he states that if he had been informed he could receive consecutive 25 year terms on counts 12 and 18, and that Dakina Sudduth would be a prosecution witness at his trial, he would have "pled guilty" and "accepted the government's offer." *Id.* at 16. Arceneaux also declares that his trial counsel told him it was too late for him to plead guilty after trial had started, and that he "was facing 60 months on each count [§924], if I was found guilty." *Id.*

#### 2. Government's Response

In opposition to this claim, the government represents that it "never offered the defendant a plea agreement for 20 years." ECF No. 908 at 35. Counsel for the government explains that the government had discussions about the possibility of Arceneaux making a proffer as a cooperating witness. However, the negotiations were terminated after Arceneaux refused to testify against his co-defendants and chose not to make a proffer. *Id.*

The prosecutor in this case has filed his own declaration in support of the government's representations. ECF No. 911. Therein, he declares that he participated in an interview with Arceneaux, at which Arceneaux's trial counsel was present, in order to discuss a possible resolution of Arceneaux's criminal charges. *Id.* at 1-2. At that meeting, he advised Arceneaux, among other things, that he could receive a mandatory minimum consecutive sentence of 25 years each on counts 12 and 18 for using a firearm during two of the bank robberies. *Id.* at 2. Counsel further told Arceneaux that he could receive a total prison term of 57 years on the gun charges and that this would be "be in addition to the sentences he will receive for the substantive bank and credit union robbery charges should he elect to go to trial and be convicted of all counts." *Id.* Counsel states that he asked Arceneaux if he had any questions about his possible penalties and Arceneaux stated that he did not. *Id.* He declares that he "spent a considerable amount of time going over the penalties with [Arceneaux]." *Id.*

The prosecutor further declares that he informed Arceneaux that if he satisfactorily cooperated with the government, he would "then discuss with him and his counsel what the terms of the plea agreement would be if his cooperation and testimony was of substantial assistance to the Government." *Id.* Counsel declares that Arceneaux repeatedly asked him "how much time he would get if he cooperated," but he was informed that the government could not "make him a specific offer as to the terms of the plea agreement without first hearing his proffer." *Id.* at 3. When Arceneaux stated that he would not testify against his co-defendants, the interview was terminated. *Id.* Counsel declares that he "never extended a plea agreement offer to [Arceneaux] for 20 years imprisonment." *Id.* He also declares that he "would have never entered into plea negotiations with [Arceneaux] or any defendant after a trial has begun." *Id.* at 4.

### 3. Evidentiary Hearing

At the March 2, 2015 evidentiary hearing on this claim, the following testimony was introduced. The prosecutor at Arceneaux's trial testified that he did not make or convey a plea offer to Arceneaux, either directly or through his trial counsel, at any time. ECF No. 1004 (sealed), at 13, 30. 38. He also testified that at a pretrial proffer session he told Arceneaux "he was looking at seven years on one robbery count, 25 years on each of the other two that run

13

consecutive – mandatory consecutive, the Judge had no authority or discretion." *Id.* at 24.
Counsel decided not to call Arceneaux as a trial witness and the proffer session was terminated.
*Id.* at 35.

Mr. Arceneaux testified that his trial counsel never told him he could receive a sentence of 81 years in prison. *Id.* at 47. He stated that if his counsel had informed him he could get a prison sentence of 81 years he would have accepted the government's plea offer. *Id.* at 47-48. He testified his trial counsel told him the government was offering "twenty years prior to trial." *Id.* at 47. Trial counsel also told Arceneaux the "maximum he could get" was 35 years. *Id.* at 47-48.

On cross-examination, Arceneaux agreed that the government never extended a written plea offer to him, but he explained that on the first day of trial the prosecutor "sidebarred with the attorneys and you told all three attorneys on the case, you offered deals to all three defendants, and then they came back and relayed those offers to the defense." *Id.* at 48. Arceneaux testified that he heard the prosecutor convey a verbal offer to his counsel at the sidebar conference of "twenty years." *Id.* at 49-50, 78-79. He stated this offer did not include "cooperation" or "testimony against other defendants." *Id.* at 60. Arceneaux also testified that he "had a conversation with [trial counsel] about a 20-year offer that was tendered by the government on the day of trial." *Id.* at 51. Arceneaux explained that he did not accept this offer because his trial counsel told him he could "beat this in trial." *Id.*

Arceneaux also testified that "no-one ever told [him]" what the "penalty is for each count." *Id.* at 62. He denied that his trial counsel told him he could receive a mandatory sentence of seven years on "the first gun count" or that he would receive a consecutive sentence of 25 years on each of the other two firearm counts and that the sentencing judge would have "no discretion" with regard to that sentence. *Id.* at 66. He also denied his trial counsel told him "that in addition to that 57 years you'll receive for the three gun counts that there are substantive robbery counts and the court can sentence you to additional time based on that and that those – that time must run consecutive to the gun counts." *Id.* Rather, Arceneaux testified that his trial counsel told him he could get "five years for each gun [count]." *Id.* at 67.

////

14

Arceneaux's trial counsel testified on direct examination that prior to trial he had several discussions with the prosecutor about "possible agreements if Mr. Arceneaux decided to plead guilty." *Id.* at 82. Counsel explained that the prosecutor suggested if Mr. Arceneaux became a trial witness for the government, he could possibly receive a sentence of 20 years. *Id.* at 83-84. Counsel conveyed this to Arceneaux. *Id.* at 84. However, Arceneaux "failed the debriefing" and was not used as a government witness. As a result, no formal written plea agreement was ever offered to Arceneaux by the government. *Id.* at 83-84.

Trial counsel told Arceneaux prior to trial that he was facing "life in prison." *Id.* at 84-85. Counsel testified that he conducted "a guideline estimate" and told Arceneaux he could receive 70 or more years in prison. *Id.* at 85. Counsel stated that Arceneaux "knew . . . that he was looking – the charge carries a potential of life and I told him that my estimate was approximately 70, could be more." *Id.* at 87. Counsel did not, however, specifically tell Arceneaux he could get a prison sentence of 81 years. *Id.*

Trial counsel had "no recollection" of the prosecutor making an oral plea offer to Arceneaux in the courtroom on the first day of trial. *Id.* at 86. He stated that Arceneaux's testimony that he heard a sidebar discussion where the prosecutor made a plea offer to defense counsel was "not consistent with [his] memory of what happened." *Id.* at 86-87. On cross-examination, Arceneaux's trial counsel was asked whether the prosecutor made a plea offer to Arceneaux on the day of trial. *Id.* at 94. Counsel responded, "no." *Id.* He stated that if such an offer had been made he would have written it in the file. *Id.* There was no such notation in the file. *Id.* Counsel stated that Arceneaux was never offered a plea deal by the government. *Id.* at 95-96. He agreed that the government did not tender a plea offer to Arceneaux because it had "questions" about his credibility. *Id.* at 96-97.

Trial counsel further testified that prior to trial he advised Arceneaux that "he was looking at a minimum term of 57 years; 25 years for – seven years for the first 924(c) and 25 years for each of the other 924(c)'s to run consecutive." *Id.* at 99. He also informed Arceneaux that his sentence on the gun charges would "run mandatory consecutive" to the guidelines sentence on the underlying robberies. *Id.* at 99-100, 101. Counsel explained to Arceneaux what the sentencing

guidelines were and how they would apply to his case. *Id.* at 101. He testified that he did not tell
Arceneaux he would receive a sentence of 81 years in prison because he was uncertain about the
exact sentence the trial judge would impose. *Id.* at 102. However, he told Arceneaux, "my
estimate is 70 – approximately 70 years, could be more." *Id.*

Trial counsel did tell Arceneaux after the verdict was rendered that "assuming that he
cooperated to the satisfaction of the government" and if everything went "the best it could," he
could possibly receive a sentence of 20 years in prison. *Id.* at 105. Counsel explained that "that
was an estimate" and a projection of "the best case scenario." *Id.* However, the 20 year estimate
was predicated on Arceneaux's cooperation in his own case and in a criminal case then pending
in the Central District of California, and was contingent on the government calling Arceneaux as
a trial witness. That never happened and the government ultimately decided not to call
Arceneaux as a witness. Accordingly, "the deal was just a discussion." *Id.* Arceneaux told trial
counsel that he would not enter into a plea agreement that required him to testify against his co-
defendants because he was concerned that he would be harmed. *Id.* at 106-07.

Trial counsel also testified that the prosecutor told Arceneaux at one of the proffer
sessions "what the penalties were," and that the sentence on the gun charges under § 924(c) were
"mandatory" and "consecutive to each other and to the substantive offenses." *Id.* at 118. Counsel
remembered that the prosecutor told Arceneaux "the gun charges alone would net him a
mandatory sentence of 57 years." *Id.*

Special agent Kevin Cipolla testified that he was present at several proffer sessions at
which the prosecutor informed Arceneaux "what kind of charges he was facing, what the
penalties were." *Id.* at 124. He also testified that the government concluded Arceneaux would
not be an acceptable trial witness and the government decided "not to use him as a cooperator."
*Id.* at 130. He testified that he was present at the counsel table and that the prosecutor did not
make "any offer to defense attorneys as it relates to Mr. Arceneaux." *Id.* at 132.

At the end of the evidentiary hearing, the prosecutor was called to the witness stand again.
He denied that he extended an oral or written offer seeking to resolve Mr. Arceneaux's case, that
he participated in a sidebar conference at the outset of Arceneaux's trial in which he sought to

resolve Arceneaux's case, or that he provided a plea offer to Mr. Arceneaux on the day of trial or at any time during trial. *Id.* at 137-38.

4. <u>Analysis</u>

After a careful review of the record, including the testimony introduced at the March 2, 2015 evidentiary hearing, the court concludes that Arceneaux is not entitled to relief on his claim that his trial counsel rendered ineffective assistance in failing to inform him of his possible sentence. Arceneaux's trial counsel credibly testified that he fully informed Arceneaux about the sentence he could receive if he went to trial, including a 50 year mandatory sentence for counts 12 and 18 alone. Arceneaux was informed by counsel that he could receive 70 years or more in prison and that the maximum possible sentence was life. This court finds Arceneaux's trial counsel to be a credible witness. The fact that trial counsel did not specifically tell Arceneaux he could receive a specific sentence of 81 years in prison is not dispositive of this claim. Rather, the record reflects that Arceneaux was fully informed that he faced at least 70 years in prison and potentially more.

In any event, the record reflects that the prosecutor did not make any plea offers to Arceneaux, either oral or written. Arceneaux's testimony that the prosecutor tendered a 20 year plea offer during a sidebar conference on the first day of trial is not credible. Arceneaux's testimony in this regard does not make sense under the circumstances of this case and was contradicted by Arceneaux's trial counsel, the prosecutor, and the lead FBI agent on the case. The evidence reflects that the prosecutor never extended a plea offer to Arceneaux because he decided Arceneaux would not be a credible trial witness. The court finds the testimony of the prosecutor to be credible and concludes that there was no offer for Arceneaux to accept and none for trial counsel to convey to him. It appears that if the government had decided to use Arceneaux as a cooperating witness and had he been willing to so cooperate, he might have received a plea offer from the government for a 20 year sentence. Trial counsel explained this to Arceneaux. However, because the government decided not to pursue this option, the 20 year offer was never extended.

/////

1    Arceneaux has failed to demonstrate either deficient performance or prejudice with

2    respect to this claim of ineffective assistance of trial counsel.  Accordingly, the claim should be

3    denied.

4                    D.  Failing to Object to Improper Vouching

5        In Arceneaux's next ground for relief, he claims that his trial counsel rendered ineffective

6    assistance in failing to object to the prosecutor's improper vouching during trial.  ECF No. 852 at

7    13.  The background to this claim is the following.  On direct appeal, Arceneaux argued that the

8    prosecutor improperly vouched for the credibility of the government witnesses when he said to

9    the jury, "The Judge has been present for the whole entire trial as well as I have.  And I can assure

10   you that neither one of us are that gullible that we're going to fall for a bunch of lies."  *United

11   States v. Williams, et al.*, 375 F. App'x at *1.  The Ninth Circuit analyzed this claim under the

12   plain error standard.  That court concluded that the prosecutor's remarks constituted improper

13   vouching but that any error was harmless.  The court pointed out that the jury was instructed that

14   testimony given by cooperating witnesses should be viewed with "great caution."  *Id.*  The court

15   also noted that the case against Arceneaux was "not close" and that "the testimony of the

16   cooperating witnesses was corroborated by the testimony of government witness Dakina

17   Suddeth."  *Id.*  The court concluded, "[b]ecause this was not a close case and in light of the

18   court's instructions, we conclude that the statements of the prosecutor, although error, did not

19   seriously affect the fairness of the trial or constitute plain error requiring reversal."  *Id.*

20       In his claim before this court, Arceneaux argues that if his trial counsel had objected to the

21   prosecutor's improper statements at the time they were made, the Ninth Circuit would have

22   analyzed this claim under the more favorable "harmless error" standard of review, instead of the

23   "plain error" standard, and would have granted the claim and reversed Arceneaux's conviction.

24   ECF No. 852 at 13.  Arceneaux has failed to demonstrate prejudice with respect to this claim.  As

25   noted by the Ninth Circuit, the evidence against Arceneaux was strong and the testimony of the

26   cooperating witnesses was corroborated by Dakina Suddeth.  Under any standard of review, the

27   prosecutor's vouching in this case was harmless.  Accordingly, movant is not entitled to relief on

28   this claim of ineffective assistance of trial counsel.

E. <u>Trial Counsel's Failure to Object to Jury Instructions and General Verdict</u>

In his penultimate claim, Arceneaux argues that his trial counsel rendered ineffective assistance in failing to object to the trial court's "general jury instructions and general verdict which resulted in a constructive amendment of the indictment." ECF No. 852 at 13. Specifically, Arceneaux argues that because the jury instructions and the verdict form did not specify which financial institution[s] Arceneaux was charged with robbing as to each count, the jury may have found him guilty of a robbery he did not commit. *Id.* at 13-15. He faults his trial counsel for "failing to object to the broad jury instructions which allowed Petitioner to be convicted for robbery of 'a' financial institution which he did not commit but; instead, 'a' defendant committed." *Id.* at 14. Arceneaux argues his trial counsel had an obligation to request a jury instruction and verdict forms which specified the particular financial institution that defendant was charged with robbing. *Id.*

The verdict forms signed by the jury specify the financial institution that is the subject of each count for which Arceneaux was found guilty. ECF No. 908 at 42-44. Under these circumstances, there is no possibility Arceneaux was convicted of a crime he did not commit. Further, there is no evidence in the record that the jury was confused about the verdict forms, the jury instructions, or its verdict. Arceneaux's assertion that he might have been convicted of a crime he did not commit based on juror confusion which is not apparent from the record is based solely on speculation. Conclusory allegations are insufficient to establish either deficient performance or prejudice with respect to a claim of ineffective assistance of counsel. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("'Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)). For these reasons, Arceneaux is not entitled to relief on his claim that his trial counsel rendered ineffective assistance in failing to object to the jury instructions and general verdict.

/////

/////

/////

F.  Whether § 2113 Armed Bank Robbery is a Crime of Violence Under

§ 924(c)(3)

Finally, Arceneaux raises several arguments as to why armed bank robbery under §2113(a) is not a crime of violence under § 924(c)(3) and, consequently, why his convictions on counts 4, 12, and 18 of the indictment[4] must be set aside.  These are: (1) section 2113(a) encompasses conduct outside the federal generic definition of robbery and, therefore, section 924(c) does not apply to bank robbery violations falling under that section; (2) the residual clause contained in section 924(c)(3)(B) is unconstitutionally vague; and (3) section 2113(a) is not a crime of violence under the 'force clause' contained in section 924(c)(3)(A).  The court declines to credit any of these arguments.  Recently, the Ninth Circuit decided *United States v. Watson* wherein it explicitly held that federal armed bank robbery remains a crime of violence within the meaning of 18 U.S.C. § 924(c).  881 F.3d 782 (2018).  This holding is obviously binding on this court and forecloses any further argument on this issue.

IV. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Arceneaux's August 22, 2016 motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1045) be denied; and

2.  The Clerk be directed to close the companion civil case, No. 2:11-cv-2781-MCE-EFB.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

---

[4] These counts are that, on three separate occasions, Arceneaux used and carried a firearm in violation of § 924(c)(1) during and in relation to a crime of violence.  ECF No. 260 at 3-11.

1991).  In his objections Arceneaux may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2255 Cases in the United States District Court (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  September 25, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE